UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 CR 796 |
| v. | ) | |
| | ) | Honorable Joan H. Lefkow |
| ABRAHAM LIRA ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT ROSALES' REPLY IN SUPPORT**
**OF MOTION FOR PRODUCTION OF AGENT NOTES**

Defendant Jessica Rosales ("Rosales"), by her attorney, Timothy P. O'Connor, respectfully submits the following Reply in support of her request that this Court enter an Order directing the government to produce the agent notes underlying the law enforcement reports of oral statements produced in discovery in this matter or in the alternative review those notes in camera to determine if production is necessary.

**INTRODUCTION**

No one claims that Rosales wrote the note, entered the bank or otherwise participated directly in the robbery. The government's case is based almost entirely on alleged oral statements of Rosales that, the government contends, show that Rosales conspired with Lira to rob the bank and then knowingly received proceeds of the robbery thereafter. The written statement does not support any of these claims because it contains no admission that Rosales helped plan the robbery and no admission that Rosales had anything to do with the proceeds thereof. The government's case is thus based entirely (or almost entirely) on the alleged oral statements. The agents' report of those statements sets forth a vocabulary, substance and

1

structure that are greatly at odds with the way that Rosales' written statement reads and with her cognitive limitations. A comparison of Lira's written statement and the report of his oral statement reveals a similar dichotomy. Under these circumstances, the agents' notes likely will shed enormous light on whether Rosales and Lira and Navar actually used words like 'plan' and made the statements that the agents claim they made or the agents instead wrote out their interpretation of what the defendants said. If the agents have offered their interpretation of what the defendants – especially Rosales – said rather than the actual words that the defendants used, the government's case will be substantially, probably fatally, diminished.[1]

Three things are clear, all of which Rosales respectfully submits warrant production of the agent notes or at least in camera review to determine if production is necessary. First, the written statements of Rosales and Lira (especially Rosales' written statement) are not consistent with the reports of the oral statements of Rosales and Lira. Second, the most contemporaneous, exact record of the actual words that the defendants used in these interviews (i.e., the agent notes) in and of itself constitutes information of enormous significance that almost certainly is not disclosed in the interview reports. Third, without the agents' notes, Rosales' ability to cross examine the agents' claim that Rosales actually used words such as "plan" and told them that she held a jacket for Lira to "change into after the robbery" and "counted the money" along with Lira and Navar, etc. – none of which is in her written statement – will be substantially, and unfairly, lessened.

## ARGUMENT

First, the reports of the oral statements are not consistent with the written statements. It is one thing to write, as Rosales apparently did, that she "talked to Abraham about

---

[1] Counsel's best recollection is that the agent who testified at the preliminary hearing stated that Rosales did use the word "plan" during the interview, but counsel does not have a transcript of this hearing.

2

what going to happed [sic]" and "help[ed] think about what is going to happen" – which just as easily could refer to trying to talk Lira out of the robbery as refer to helping to plan the robbery – and quite a different thing to say, as the FBI claims Rosales did, that she and Lira "…told ROBERTO NAVAR … of <u>their</u> plan that morning."  <u>Compare</u> Report of Rosales' Oral Statement, Exhibit D to Motion to Sever, with Rosales' Written Statement, Exhibit E to Motion to Sever (emphasis added).  The government is thus incorrect in claiming that the written statement is "entirely consistent" with the statement in the report of the oral interview that Rosales said that she and Lira told Navar of their "plan" to rob the bank.  The two statements are not at all consistent on this point.

Nor is the government's broader argument that the reports must accurately reflect what is in the notes because the "reports do, in fact, fully and accurately reflect the defendant's written and signed statement" (Resp. at pp. 6-7) correct.  Elsewhere in its papers, here is how the government compared Rosales' written and oral statements:

> Second, FBI agents would testify at a trial, consistent with their reports, that defendant Rosales made statements implicating herself in the bank robbery that were <u>not fully or well articulated in her written confession</u>.

Resp. at p. 4 (emphasis added).  Actually, the "statements implicating herself" that the government attributes to Rosales are not articulated at all in her written statement, which contains no mention of any "plan" to rob the bank, any holding of a jacket for Lira or any receipt, counting or other involvement with the proceeds of the robbery.  A review of Lira's written statement and the report of his oral statement reveals a similar dichotomy.  <u>Compare</u> Report of Lira's Oral Statement (Exhibit A to Motion to Sever) (stating that the three defendants "planned" a bank robbery) with Lira's Written Statement, (Exhibit B to Motion to Sever) (stating that he and Rosales "talked" to Navar about robbing "Harrison Bank").

3

Far from assisting the government, a comparison of the written statements and the reports of oral statements supports Rosales. The inconsistency between the written statements and the reports of oral interviews supports powerfully Rosales' request for production of the agents' notes because it calls into stark question whether the reports really reflect what the defendants actually said. On the one hand is what the defendants themselves apparently wrote and on the other is a report of what they allegedly said. The substantive and stylistic differences between the two are striking and raise the inference that the reports of oral interview are at least in part incorrect.

Second, the government offers no authority to rebut Rosales' claim that the notes can constitute "information" that is not present in the reports because the notes are a closer, more contemporaneous record of what the defendants actually said than the written report. Especially here – where even minor differences in word choice likely will be critical at trial – obtaining the best record of what the defendants actually said is critical for a fair trial of the case.

Third, the government contends that any concerns that Rosales has about the exact words that she and the other defendants used in their interviews can be allayed by cross examining the agents at trial. But without the notes, Rosales' ability to cross-examine the agents will be substantially diminished. Take, for example, the question whether Rosales told the agents that she and Lira told Navar about "their plan" to rob the bank. If Rosales really said this, the agents' notes should reflect these exact words or something very close thereto, as any trained law enforcement officer almost certainly would make sure to record the use of words freighted with such legal and factual significance by an interviewee. Similarly, if Rosales really made the other statements that the government attributes to her -- such as that Rosales held a jacket for Lira outside the bank to change into and that Rosales helped to count the money – the notes

should reflect these exact words or something very close thereto. If the agents' notes do not reflect these statements, that will raise a powerful inference that the agents have offered their interpretation of what the defendants said and not the defendants' exact words. But without the notes, Rosales will be powerless to bring this to light; the agents likely will parrot what is in their reports and Rosales will have a greatly reduced ability to test their assertions.

        <u>Fourth</u>, if this Court is unwilling to order production of the agents' notes outright, Rosales respectfully submits that the Court should examine the notes <u>in camera</u> to determine whether they contain information that is not set forth in the agents' reports. As demonstrated above, if the agent notes do not contain key words such as "plan" or "count" or other contemporaneous record of the oral statements that the agents claim were made, the notes should be made available for use in cross examination. The substantial inconsistencies between the written and oral statements and the other points discussed above demonstrate the need for at least an <u>in camera</u> review. <u>See</u> <u>United States v. Muhammad</u>, 120 F.3d 688, 699 (7th Cir. 1997) (noting that district court reviewed agent notes in camera to determine if there were inconsistencies between 302 report and agent notes).

**CONCLUSION**

WHEREFORE, Defendant Jessica Rosales respectfully requests that this Court enter an Order directing the government to produce the agent notes underlying the law enforcement reports of oral statements produced in discovery in this matter or in the alternative review those notes in camera to determine if production is necessary.

Date:  April 23, 2008.                    Respectfully submitted,

                                          JESSICA ROSALES


                              By:    /s/Timothy P. O'Connor
                                     One Of Her Attorneys

Timothy P. O'Connor
MEYER & O'CONNOR, LLC
Suite 2210
20 S. Clark
Chicago, IL 60603
(312) 346-9000

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing DEFENDANT ROSALES' REPLY IN SUPPORT OF MOTION FOR PRODUCTION OF AGENT NOTES to be served upon:

AUSA Yussef Dale
United States Attorney's Office
219 S. Dearborn St.
Chicago, IL 60604

Patrick W. Blegen
Blegen & Garvey
Suite 1437
53 W. Jackson Blvd.
Chicago IL 60604

Sergio F. Rodriguez
Federal Defender Program
55 East Monroe
Suite 2800
Chicago IL 60603

by electronic service on this 23rd day of April, 2008.

/s/ Timothy P. O'Connor