UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 CR 796 |
| v. | ) | |
| | ) | Honorable Joan H. Lefkow |
| ABRAHAM LIRA ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT ROSALES' REPLY IN SUPPORT OF MOTION TO SEVER**

Defendant Jessica Rosales ("Rosales"), by her attorney, Timothy P. O'Connor, respectfully submits the following Reply in support of her request that this Court enter an Order (1) severing her trial from the trial of her co-defendants Abraham Lira ("Lira") and Roberto Navar ("Navar") and (2) in any event and in the alternative severing the trial of Count One of the Indictment – which charges an April 2, 2007 bank robbery solely involving Lira – from the trial of the rest of the charges (Counts Two through Five), all of which concern a December 4, 2007 bank robbery that the government contends involved all three defendants.

**INTRODUCTION**

The heart of Rosales' request for severance is her contention that she will be deprived of her constitutional right to confront the witnesses against her in a joint trial with her co-defendants, both of whom have made statements implicating her and enjoy an absolute right not to testify at trial. The government's has failed to rebut this claim. The government's contention that the evidence against Rosales is overwhelming is absolutely incorrect and in any event is legally irrelevant (an improper consideration, really) in the severance analysis. The government's contention in a footnote that the prejudice to Rosales can be ameliorated by

1

redaction and the issuance of a limiting instruction is likewise without merit. The government never explains how – in light of the fact that there are only three actors in this case and each had distinct roles under the government's own evidence – redaction will leave the jury with any doubt at all that Rosales is the person referred to in the statements of Lira and Navar.

The fact is that redaction will do no such thing. A joint trial under these circumstances will, in substance, be exactly the type of trial that the Supreme Court held long ago in <u>Bruton v. United States</u>, 391 U.S. 123, 135-36 (1968) should not happen. The jury will know exactly who is referred to at the redacted portions of the statements. Rosales thus will be faced with her co-defendants – two desperate young men in their twenties – heaping blame on her, a high school senior of limited ability who is barely old enough to be considered an adult, and she will have no ability to cross examine them.

Under these circumstances, and for other reasons set forth below, severance is warranted.

**ARGUMENT**

Rosales respectfully submits that this Court should enter an Order (1) severing her trial from the trial of her co-defendants Abraham Lira and Roberto Navar and (2) in any event severing the trial of Count One of the Indictment from the trial of the rest of the charges.

**I.　　THIS COURT SHOULD SEVER ROSALES FOR A SEPARATE TRIAL**

Rosales respectfully submits that the government has failed to blunt her basic contention that she will be deprived of her sixth amendment right to confront the witnesses against her in a joint trial with Lira and Navar. The government argues against a severance of Rosales on the grounds that (1) the evidence against Rosales is "overwhelming" and (2) "redacting from co-defendant Lira's written confession any reference to 'girlfriend' or 'Jessica'

coupled with a limiting instruction would sufficiently protect defendant's constitutional rights." Govt. Resp. at pp. 3-4 and n. 3. Rosales respectfully submits that these arguments are without merit.

<u>First</u>, the strength of the evidence against Rosales is not a factor that should be taken into account in determining whether to grant a severance. The government in this regard conflates a factor that the Seventh Circuit considers in order to determine whether an erroneous failure to grant a severance was harmless error with the test that this Court should apply in determining in the first instance whether to grant a severance. <u>United States v. Hoover</u>, 246 F.3d 1054 (7th Cir. 2001), cited by the government on this point, actually refutes the government's argument. The court there considered the strength of the evidence in determining whether a <u>Bruton</u> error was harmless, not in considering whether a <u>Bruton</u> error – which the court found was made in the district court despite overwhelming evidence against the defendant – existed in the first place. <u>Hoover</u>, 246 F.3d at 1059-60. The government cites no case that holds that the strength of the evidence against a defendant should be considered as part of this Court's severance analysis and Rosales has found no such decision. Indeed, no such rule could exist: the strength of the government's case typically cannot be assessed at such a preliminary stage with sufficient confidence to make the decision whether to sever depend thereon.

<u>Second</u>, the evidence against Rosales is in any event anything but overwhelming. The government's claim that Rosales "herself drafted and signed a confession unequivocally implicating herself in the bank robbery of December 4, 2007" (Resp. at 4) is simply incorrect. Rosales set forth the entirety of this statement in her initial Motion. All the written statement says is that Rosales "talked to Abraham about what going to happed [sic]," "help[ed] think about what is going to happen" and that she and Navar walked "1 ½ streets *away* from the bank."

Written Statement Of Jessica Rosales, attached to Motion To Sever as Exhibit E (emphasis added).  Nowhere in the statement is there any mention of Rosales holding a change of clothes for Lira outside the bank or counting or in any way receiving any of the stolen monies.  Nor is there any admission that Rosales helped "plan" the robbery; the statements about talking "about what going to happed [sic]" and "help[ing] think about what is going to happen" are certainly not that.  Those statements could just as easily mean that Rosales tried to talk Lira out of robbing the bank.  Nor is the proffered testimony of law enforcement agents about Rosales' alleged oral statements "overwhelming evidence" in any way.  In this regard, Rosales' written statement undercuts both the government's and the agents' claims.  For instance, the agents claim that Rosales told them that she and Lira told Navar of "their plan" to rob the bank.  Nowhere in Rosales' written statement is any such phrase used and it is difficult, in light of the written statement and Rosales' evident disabilities, to imagine Rosales using the word "plan."  Compare Report of Rosales' Oral Statement, Exhibit D to Motion to Sever, with Rosales' Written Statement, Exhibit E to Motion to Sever.   The agents also claim that Rosales told them that she held a jacket outside the bank for Lira to change into after the robbery, but there is no mention whatsoever of this in Rosales' written statement.  Id.  Nor is there any mention in the written statement of Rosales counting (or even receiving) any stolen money, although the agents claim that she told them that she both helped to count the stolen money and possessed a significant part of those funds.  Id.

   Third, the government is incorrect in its suggestion that references to Rosales in the statements of Lira (and presumably also in the statement of Navar) can be redacted and that such redactions and a limiting instruction will suffice to protect Rosales' rights.  The government never explains exactly how the redactions will leave the jury without actual knowledge that

4

Rosales is the person referred to at the redacted points in the statements. In particular, the government fails to address the fact that there are only three actors in the events at issue and that each had a distinct role such that it will be obvious to whom reference is being made in the statements even in there is a redaction. For example, the first lines of Lira's written statement provide: "This morning when me and girlfriend Jessica Rosales woked up we talked to her cousin Roberto Navar about robbing Harrison [sic] Bank and we did like the first bank." Written Statement of Abraham Lira, attached to Motion to Sever as Exhibit B. Merely replacing "girlfriend Jessica Rosales" with a generic phrase such as "my friend" or "someone else" or any other phrase will not suffice to obscure in any meaningful way that Rosales is the person referred to. The jury will know that Lira and Rosales were involved in a romantic relationship and that the person that Lira woke up with was Rosales. Similarly, according to the Report of Lira's Oral Statement, Lira told agents, <u>inter alia</u>, that: "On December 4, 2007, LIRA, ROSALES, and ROBERTO NAVAR planned a bank robbery…" Report of Oral Statement of Lira, attached as Exhibit A to Motion to Sever. There is simply no way that redacting either Rosales' name or Navar's name or both names from this statement will obscure in any meaningful way that Rosales and Navar are the persons to whom Lira is referring. There apparently were only three people (other than children and possibly Navar's mother) in the house that morning: Lira, Rosales and Navar, the three people charged herein and the only persons whom the government claims had any role in this robbery. The jury clearly will know – regardless of any redaction – that Rosales and Navar are the persons to whom Lira is referring.

<u>Fourth</u>, at bottom, a joint trial of this case would be profoundly unfair. Lira and Navar – both desperate young men in their early twenties -- made allegations in their statements against Rosales, a high school senior with severe learning disabilities who is barely old enough

5

to be considered an adult. If these statements are going to come into evidence against Rosales, then she must have the right to cross-examine Lira and Navar. As demonstrated above, in a joint trial these statements will come in against Rosales, notwithstanding any redactions or limiting instructions. But Rosales will be unable to cross-examine either Lira or Navar. In such circumstances, Rosales will be deprived—in a very real and tangible way – of her constitutional right to confront adverse witnesses – and will be deprived of a fair trial.[1]

## II.　IN THE ALTERNATIVE THIS COURT SHOULD SEVER COUNT ONE

The government contends that (1) Count One (the April, 2007 robbery) is properly joined with Counts Two through Five (December 2007 robbery) and (2) Rosales is not entitled to a severance of Count One in the event that this Court declines to sever her generally for a separate trial. Resp. at pp. 1-2, 4-5. Rosales respectfully submits that these arguments are without merit.

First, the government's argument that the two robberies were properly joined in a single Indictment misses the underlying profound differences in the nature of the charges that the government has brought with respect to the two robberies. Rule 8(a) requires more than that the two crimes have a common defendant and/or a common charge; the two crimes must, on the facts of this case, be of "same or similar character." Fed. R. Crim. P. 8(a). Thus, it is not enough that two bank robberies are charged or that Lira is the person who allegedly entered the bank in both robberies. More is required and that is lacking here. Instead, the government has knitted together two very dissimilar robberies separated by approximately eight months, as Rosales described at length in her initial Motion, with accomplices and a conspiracy allegedly present in

---

[1] With respect to her claim that the April 2, 2007 robbery charge in Count One requires that she be severed entirely for a separate trial, Rosales stands on (1) her opening Motion and (2) the arguments on this point set forth in the section of this Reply that addresses her argument that Count One in the alternative should be severed.

6

one robbery but not in the other. That makes for administrative convenience, but not proper joinder.

Second, more profoundly, the government's contention that Rosales will not be unfairly prejudiced in a joint trial concerning both robberies – and that severance of Count One under Rule 14 is therefore not warranted – dramatically understates the unfair prejudice that Rosales will face in a joint trial. It will be too difficult, at best, for the jury to not consider *Lira's* alleged earlier robbery *against Rosales* in light of the fact that the two apparently were in a romantic relationship at the time of the second robbery. Thus, given the relationship between Rosales and Lira, the jury will be unable to follow limiting instructions and sort through the evidence capably, thereby warranting severance to avoid "prejudicial spillover." United States v. Stillo, 57 F.3d 553, 557 (7th Cir. 1995).

**CONCLUSION**

WHEREFORE, Defendant Jessica Rosales respectfully requests that this Court enter an Order (1) severing her trial from the trial of her co-defendants Abraham Lira and Roberto Navar and (2) in any event and in the alternative severing the trial of Count One of the Indictment from the trial of the rest of the charges.

Date:  April 23, 2008.                               Respectfully submitted,

                                                     JESSICA ROSALES


                                        By:     /s/Timothy P. O'Connor
                                                One Of Her Attorneys

Timothy P. O'Connor
MEYER & O'CONNOR, LLC
Suite 2210
20 S. Clark
Chicago, IL 60603
(312) 346-9000

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing DEFENDANT ROSALES' REPLY IN SUPPORT OF MOTION TO SEVER to be served upon:

AUSA Yussef Dale
United States Attorney's Office
219 S. Dearborn St.
Chicago, IL 60604

Patrick W. Blegen
Blegen & Garvey
Suite 1437
53 W. Jackson Blvd.
Chicago IL 60604

Sergio F. Rodriguez
Federal Defender Program
55 East Monroe
Suite 2800
Chicago IL 60603

by electronic service on this 23rd day of April, 2008.

/s/ Timothy P. O'Connor